UNITED STATES, Appellee

v.

Eric E. GRANT, Staff Sergeant
U.S. Air Force, Appellant

No. 01-0363

Crim. App. No. S29569

_____

United States Court of Appeals for the Armed Forces

Argued October 23, 2001

Decided April 18, 2002

BAKER, J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE and EFFRON, JJ., and SULLIVAN, S.J., joined.  SULLIVAN, S.J., filed a concurring opinion.

Counsel

For Appellant:  Captain Karen L. Hecker (argued); Colonel James R. Wise and Lieutenant Colonel Timothy W. Murphy (on brief).

For Appellee:  Major Linette Romer (argued); Colonel Anthony P. Dattilo, Major Lance B. Sigmon, and Major Byran T. Wheeler (on brief); Captain James C. Fraser.


Military Judge:  Robin D. Walmsley


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

Judge BAKER delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by a special court-martial, composed of officer members, of one specification of wrongful use of marijuana on divers occasions,[1] in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a.  Appellant's adjudged and approved sentence provides for a bad-conduct discharge, forfeiture of $622 for one month, and reduction to pay grade E-1.  The Court of Criminal Appeals affirmed in an unpublished opinion.  We granted review of the following issues:

I

> WHETHER THE MILITARY JUDGE ERRED BY APPLYING
> A LOWER STANDARD OF ADMISSIBILITY FOR
> EVIDENCE USED AS CORROBORATION OF A
> CONFESSION TO DRUG USE THAN HE WOULD HAVE
> APPLIED IF THE SAME EVIDENCE HAD BEEN
> OFFERED AS DIRECT PROOF OF DRUG USE, AS
> SHOWN BY HIS ADMISSION OF A MEDICAL DRUG
> SCREEN TEST RESULT:
>
> A.   AS A BUSINESS RECORD EXCEPTION TO THE
>      HEARSAY RULE DESPITE A LACK OF
>      FOUNDATION AND AUTHENTICATION TESTIMONY.
>
> B.   WHEN THE URINE WAS NOT MAINTAINED
>      SUBJECT TO ANY CHAIN OF CUSTODY
>      PROCEDURES PRIOR TO TESTING AND THE
>      GOVERNMENT DID NOT PRESENT ANY EVIDENCE
>      THAT THE URINE WAS PRESERVED IN AN
>      UNALTERED STATE.
>
> C.   WITHOUT ANY EXPERT TESTIMONY REGARDING
>      THE TEST PROCEDURES OR THE RESULTS.

---

[1] "Specification:  In that STAFF SERGEANT ERIC E. GRANT . . . did, . . . on divers occasions, between on or about 15 October 1997 and on or about 23 November 1997, wrongfully use marijuana."

II

WHETHER THE MILITARY JUDGE ERRED BY FINDING
THE 22 NOVEMBER DRUG SCREEN TEST RESULT TO
BE CORROBORATION OF THE ESSENTIAL FACTS OF
APPELLANT'S CONFESSION TO DIVERS USES OF
MARIJUANA IN OCTOBER AND NOVEMBER.

III

WHETHER THE MILITARY JUDGE ERRED TO THE
SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE
INSTRUCTED THE MEMBERS ON THE USE OF THE
DRUG SCREEN TEST RESULTS TO CORROBORATE THE
CONFESSION.

IV

WHETHER THE MILITARY JUDGE ERRED TO THE
SUBSTANTIAL PREJUDICE OF APPELLANT IN NOT
GRANTING THE DEFENSE MOTION FOR A FINDING OF
NOT GUILTY DUE TO INSUFFICIENT CORROBORATION
OF APPELLANT'S CONFESSION.

Our resolution of the first two issues against appellant makes it unnecessary to reach the remaining issues, and we affirm.

BACKGROUND

On November 22, 1997, appellant was found unconscious at the club complex on Incirlik Air Base in Turkey. He was transported by ambulance to the base hospital, where he was evaluated by the physician on duty, Captain (Capt) Poindexter. Observing that appellant was unconscious and unresponsive to pain stimuli, Capt Poindexter ordered, among other things, a drug screen urinalysis. The drug screen was ordered in accordance with "the customary medical protocol for diagnosis

and treatment" followed when the physician encounters a patient in appellant's condition. The purpose for the screen was to detect the presence of any "abnormal" drugs in the body. Once the physician learned what drug was present, a treatment option could be selected to rapidly eliminate the drug from the body, thereby decreasing the patient's unresponsiveness.

In the two years he had been stationed at the Incirlik hospital, Capt Poindexter never ordered a drug screen prior to this occasion. Consequently, he was unaware that the hospital, unequipped to perform the screen, was required to send appellant's urine sample to the Armstrong Laboratory at Brooks Air Force Base in Texas. It took two weeks for Incirlik to receive results of any drug screen requested from Brooks Air Force Base. Apparently, Capt Poindexter's experience stateside had been that a physician could receive results of a drug screen within an hour of requesting one.

Meanwhile, based on results of other tests requested by Capt Poindexter and received at the time of initial treatment, he diagnosed appellant as suffering from acute alcohol intoxication. Appellant was treated accordingly and released from the hospital the following day, November 23. Although appellant had been released, the hospital continued processing Capt Poindexter's request to test the urine sample.

4

Armstrong Laboratory subsequently received the sample on November 28, tested it, and notified Incirlik of the results by e-mail on December 5. Senior Airman (SrA) Lynch, a lab technician at the hospital, received the results from Armstrong, downloaded the report, and printed it out. This report contained the "Armstrong Laboratory Epidemiology Division" heading at the top of the page. It also contained the name and Social Security Number of the patient, along with the various drugs tested for and the results of those tests. The result column of the report indicates either "NEGATIVE" or "POSITIVE," depending on what drugs were detected in the patient's urine.[2] This report indicated that appellant's urine tested positive for cannabinoids.

On December 9, appellant was interviewed by agents of the Air Force Office of Special Investigations and initially denied using marijuana. However, after being confronted with the results of the drug screen, appellant executed a handwritten statement admitting to the use of marijuana on three separate occasions. The statement, in relevant part, reads as follows:

15 Oct 97

I went to the Alley and was asked by Tony if I wanted to go to a party. I said okay and we left. Tony stopped by a friends [sic] house and told me to come on. I said okay and we went upstairs. Tony's friend got a bowl and pipe out and asked me [and] Tony

---

[2] For positive results, the report does not show what amount of the drug is present.

> to take a hit. . . . I took it and I took 2 hits. . .
> . The pipe we smoked was filled with marijuana.
>
> 1st week Nov 97
>
> I ran into Tony at the [A]lley and he told me to
> jump in his ride and I did.  He . . . stopped by his
> [same] friends [sic] house. . . . We went upstairs and
> his friend brought out a pipe again and the same thing
> happened.  Tony passed it over to me and told me to
> take a hit three times so I did. . . . Again, the pipe
> was filled with marijuana.
>
> 2nd or 3rd week in November
>
> I was down in the [A]lley as usual and was having a
> drink . . . and saw him there. . . . We went to his
> buddies (sic) home again and the same thing happened
> again.  He said take this and I said okay . . . . On
> this occasion I smoked 3 to 4 hits of marijuana at the
> same house.

At trial, the Government offered the report of the positive

drug screen as an exception to the hearsay rule under

Mil.R.Evid. 803(6), Manual for Courts-Martial, United States

(2000 ed.),[3] for the limited purpose of corroborating appellant's

confession of December 9.  The Government called no witnesses

from either Incirlik or Armstrong to testify about the chain of

custody regarding appellant's urine sample.  Nor did it call any

witnesses to testify about the testing procedures used at

Armstrong Laboratory.  Instead, the Government called Capt

Poindexter and SrA Lynch to demonstrate the hospital's reliance

on the record and to establish that the record was procured and

---

[3] All Manual provisions are identical to the ones in effect at the time of
appellant's court-martial.

incorporated in the hospital's records in the normal course of business.  Over timely defense objection, the military judge admitted the report to corroborate appellant's confession and subsequently admitted the confession.

DISCUSSION

I

Appellant's complaint on appeal is that the drug screen report from the Armstrong lab was not admissible as a business record, and that the military judge should have treated the report in the same fashion as urinalysis reports admitted in the "standard urinalysis case."  Consequently, the members should not have been allowed to consider his uncorroborated confession.

Regardless of the purpose for which it is admitted, all evidence must be authentic,[4] relevant, and otherwise competent.  See generally 2 John W. Strong, McCormick on Evidence § 212 at 8, § 218 at 36 (5th ed. 1999); Black's Law Dictionary 577 (7th ed. 1999).  We review a military judge's ruling admitting or excluding evidence for an abuse of discretion.  United States v. Hursey, 55 MJ 34, 36 (2001).

Competence of the Lab Report as a Business Record

Appellant asserts that at trial, the Government provided

---

[4] We note the report, Prosecution Exhibit 1, contained a stamped certification from the custodian of the record.  Therefore, the document was self-authenticating under Mil.R.Evid. 902(4a), Manual for Courts-Martial, United States (2000 ed.).

insufficient foundation to admit the Armstrong lab report under

Mil.R.Evid. 803(6) as a business record of the Incirlik

hospital.  Mil.R.Evid. 803(6) is one of a number of exceptions

to the hearsay rule.  It states in pertinent part:

> The following [is] not excluded by the hearsay rule. . .
>
> * * *
>
> Records of regularly conducted activity. A memorandum,
> report, record, or data compilation, in any form, of
> acts, events, conditions, opinions, or diagnoses, made
> at or near the time by, or from information
> transmitted by, a person with knowledge, if kept in
> the course of a regularly conducted business activity,
> and if it was the regular practice of that business
> activity to make the memorandum, report, record, or
> data compilation, all as shown by the testimony of the
> custodian or other qualified witness, unless the
> source of information or the method or circumstances
> of preparation indicate lack of trustworthiness.

This Court has yet to address the foundation necessary to

admit under Mil.R.Evid. 803(6) a business record created by a

third party not before the trial court, that is incorporated

into the business records of the testifying party.  However, as

the Military Rules of Evidence are largely derived from the

Federal Rules of Evidence, we look to the federal Courts of

Appeals for treatment of the issue.  Our review reveals that

these courts have generally held that a document prepared by a

third party is properly admitted as part of a second business

entity's records if the second business integrated the document

into its records and relied upon it in the ordinary course of

its business.  See Air Land Forwarders, Inc. v. United States,
172 F.3d 1338 (Fed. Cir. 1999); MRT Construction, Inc. v.
Hardrives, 158 F.3d 478 (9th Cir. 1998); United States v. Doe,
960 F.2d 221 (1st Cir. 1992); United States v. Jakobetz, 955
F.2d 786 (2d Cir. 1992); United States v. Ullrich, 580 F.2d 765
(5th Cir. 1978); United States v. Carranco, 551 F.2d 1197 (10th
Cir. 1977).

At issue in Air Land Forwarders, Inc., was the trial
court's admission of certain repair estimates produced by third
parties but maintained in the records of a military
transportation office.  Air Land Forwarders, Inc., was a common
carrier under contract with the Military Traffic Management
Command to transport servicemembers' household goods.  When a
member initiated a claim, he was required to submit a number of
documents detailing the circumstances of the loss.
Servicemembers could also submit repair estimates prepared by
third parties to prove the amount of the claim.  The trial court
concluded that it was the regular course of the Military Traffic
Management Command to collect such information and include it in
the entire claims file.  It further concluded that the military
relied upon the repair estimates to properly adjudicate the
claims, indicating the military's interest in the accuracy of
the claims records.  172 F.3d at 1341, 1343.  Finally, the trial
court concluded that the trial record contained assurances of

reliability.  For instance, servicemembers filed their claims with the knowledge that filing a false claim exposed them to criminal liability.  Id. at 1343.  The Court of Appeals then held that the repair estimates were "properly admitted. . . even though the government did not produce a witness that could testify with first-hand knowledge as to the procedures used in the original preparation of each of the repair estimates."  Id. at 1344.

In Doe, the defendant was convicted of being a felon in possession of a firearm that had moved in interstate commerce.  The Government's evidence on this issue included, inter alia, an invoice from a South Carolina telemarketing firm admitted through the testimony of a Massachusetts sports shop owner who had ordered the firearm from the firm.  The invoice was admitted as a business record of the sports shop owner, and the Court of Appeals found this proper.  The court noted as "irrelevant" the fact that the invoice had earlier been the record of a different business.  Id. at 223.  The court focused instead on the shop owner's testimony that he relied on such documents to show acquisition of the firearm.  In addition, federal law required him to keep an "acquisition and disposition book."  Id. Logically, he had a substantial interest in the accuracy of the record.  See MRT Const., Inc., supra.

What we conclude from the cited cases is that a record incorporated by a second entity may be admitted under Mil.R.Evid. 803(6) on the testimony of a "qualified witness" of the incorporating entity alone if certain criteria are met. First, the incorporating entity must obviously procure and keep the record in the normal course of its business. Mil.R.Evid. 803(6). Second, the entity must show that it relies on the accuracy of the incorporated record in its business. Air Land Forwarders, Inc., 172 F.3d at 1343. Finally, there must be "other circumstances indicating the trustworthiness of the document." Id.

In this case, both SrA Lynch and Capt Poindexter were qualified witnesses who provided sufficient foundation to show that the Armstrong lab report had been incorporated by the hospital as its own business record. SrA Lynch testified that he was very familiar with the hospital lab's procedures for handling urine samples. He testified how the samples are prepared and shipped to the Armstrong lab and that a record was kept of the shipments. In the past, he had sent samples to Armstrong and had "always gotten back results showing either positive or negative." He testified as to the daily practice of the Armstrong lab of sending results by e-mail and that they did so "all the time" in the course of the Armstrong lab's business. He further testified that it was his practice when he received

11

results to download the e-mail, print it out, and file it.  His testimony was that this procedure occurred in the hospital lab "all the time."

Capt Poindexter also testified regarding his familiarity with how medical records were maintained at the hospital.  He testified that the hospital had a duty imposed by regulations to maintain documents like the drug screen report in the patient's medical records.  As for the specific report in issue, he identified it as a copy of that which was contained in appellant's medical record.  He further testified as to his familiarity with Air Force medical testing and stated that he and presumably other physicians rely on such results to be accurate "in order to make the appropriate treatment" in cases where the patient is unresponsive to pain stimuli.

As for indicia of trustworthiness, Capt Poindexter's reliance on the report speaks directly to its trustworthiness. Presumably, those responsible for conducting the test and providing the results at Armstrong are aware that an incorrect result may lead to a patient's failure to receive proper medical treatment, which could be potentially followed by serious medical consequences or even death.  2 McCormick on Evidence, supra, § 293 at 264 (discussing the reasons why modern medical records are generally reliable).  Moreover, there is no evidence

12

in the record that suggests the hospital had received false or erroneous results from Armstrong in the past.

Based on this record, we hold that witnesses Lynch and Poindexter provided a sufficient basis for admitting the Armstrong lab report as a business record of the Incirlik hospital, and the military judge did not abuse his discretion in doing so.[5]

### Relevance of the Drug Screen Report

Appellant also asserts that aside from establishing the report as a business record, the Government was required to put on expert testimony to interpret the results from the Armstrong lab, and he relies on United States v. Murphy, 23 MJ 310 (CMA 1987), for this proposition. In Murphy, this Court held that "[e]xpert testimony interpreting [scientific] tests . . . is required to provide a rational basis upon which the factfinder may draw an inference that marihuana was used." Id. at 312.

---

[5] Appellant contends on appeal that Prosecution Exhibit 1, the drug screen report, is different than the version of that report attached to trial defense counsel's motion to suppress (Appellate Exhibit II). He now argues this is evidence that the report was altered and, thus, cannot be considered reliable. We must assume that trial defense counsel, who submitted the document with his trial motion, was aware of this alleged discrepancy. However, neither his written motion to suppress the report nor his motion to suppress the confession (AE III) raises this issue or even suggests that it was a concern. Moreover, neither his cross examination of SrA Lynch nor his argument to the military judge on the record suggests this was his concern. Furthermore, as noted earlier, PE 1 was admitted with an authenticating certificate. On the other hand, the document attached to AE II was not offered for admission. Nor is there any indication on the record as to the origin of this document. The trial record is silent as to why trial defense counsel did not raise this issue, and we will neither speculate nor suggest the military judge had a sua sponte duty to do so.

However, appellant's reliance on Murphy ignores the fact that evidence inadmissible for one purpose may be admissible for another purpose. 1 McCormick, supra, § 59 at 259.

Admissibility determinations depend on the relevance of the evidence offered. Relevance is said to have two components, materiality and probative value. Id., § 185 at 637. The former "looks to the relation between the propositions that the evidence is offered to prove and the issues in the case." Id. The latter describes "the tendency of evidence to establish the proposition that it is offered to prove." Id. at 638.

In this light, the purpose behind the evidence provides the critical distinction. In Murphy, the urinalysis was offered as proof of the substantive issue, whether the accused wrongfully used marijuana. In this case, the drug screen report was offered on the issue of whether or not appellant's confession was worthy of belief. The implicit proposition sought to be proved was that appellant had not mistakenly or otherwise admitted to an offense which either had not occurred or that he had not committed. See id., § 145 at 523. Indeed, the military judge expressly stated that he was admitting the report for the limited purpose of corroborating the confession and instructed the members accordingly.

Thus, appellant's argument that the military judge used a lower standard of admissibility than that which is required for

the "standard urinalysis case" misses the point.  The purpose
for which evidence is offered governs its admissibility.  The
fact that this Court has mandated additional foundational
requirements for admitting a urinalysis offered on the
substantive issue of wrongful use does not change the law of
evidence pertaining to the admissibility of a business record
offered to corroborate a confession.[6]  Therefore, the military
judge did not abuse his discretion by not requiring the
Government to support its offer of the report with expert
testimony.

Somewhat related to his claim pertaining to expert
testimony is appellant's assertion that unlike a "standard"
urinalysis case, no chain of custody evidence was presented
relating to the handling of the urine sample tested by the
Armstrong lab.  Generally, a chain of custody is a foundational
prerequisite for admitting real or tangible evidence on a
substantive issue in the case.  McCormick, supra, § 212 at 8.
For example, in a typical Article 112a prosecution, a urinalysis
may be offered to show wrongful use at the particular time
charged in the specification.  Thus, the actual state of the

---

[6] This opinion is about corroborating a confession with a business record.
Therefore, this case does not limit or otherwise affect the holding in United
States v. Graham, 50 MJ 56 (1999), which addressed, inter alia, the relevance
of a four-year-old positive urinalysis test, for which appellant was tried
and acquitted, to rebut the appellant's claim of innocent ingestion involving
a positive urinalysis four years later.

15

urine sample introduced is at issue in that situation. That simply was not the purpose for which the drug screen report was introduced against appellant. Indeed, his confession was the evidence offered on his wrongful use during the period charged. Therefore, the scope of the issue presented obviates the need to address any issue of chain of custody. Moreover, Capt Poindexter testified that he saw appellant being catheterized and observed the sample being taken to the Incirlick hospital lab from where it was ultimately sent to the Armstrong lab. He also testified that that was the last he saw of the sample. The members were free to either accept or reject this evidence in determining the weight to be given the confession. See United States v. Duvall, 47 MJ 189 (1997).

II

Appellant assails the military judge's ruling regarding corroboration of his confession by arguing that the drug screen report did not corroborate his confession. Alternatively, even if it was indicative of recent marijuana use, he argues it was insufficient to corroborate his confession to past instances of use.

Mil.R.Evid. 304, Manual, supra, contains the requirement that a confession be corroborated by independent evidence justifying sufficiently an inference of truth of the essential

16

facts admitted.[7] The rationale for such a rule is to "ensure that the confession is not false." Duvall, 47 MJ at 192. Also, it is settled military law that the quantum of evidence needed to corroborate "may be very slight." United States v. Melvin, 26 MJ 145, 146 (CMA 1988).

Appellant attempts to draw comparisons between his case and United States v. Rounds, 30 MJ 76 (CMA 1990). There, the accused was charged with divers uses of cocaine and divers uses of marijuana. He had confessed to using cocaine on Thanksgiving and New Year's Day. The Government introduced testimony from a witness who had accompanied the accused on both occasions. This witness testified that on Thanksgiving Day, he left the accused with some of his former high school friends who he knew had been previously involved with drugs. However, the witness observed no drugs at this gathering. As for New Year's Day, the witness testified to seeing the accused at a party where cocaine was abundantly and prominently displayed. We concluded the appellant's confession to the New Year's Day use was corroborated while the confession to the use on Thanksgiving was not. Id. at 80.

---

[7] "(g) Corroboration. An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth."

17

Whatever similarities might be gleaned between appellant's case and Rounds, we are not persuaded that the rationale of that case is applicable to his.  In Rounds, the evidence that Rounds had been seen in the company of individuals who a witness claimed to have at some previous time been associated with drugs corroborated nothing, let alone Rounds's confession. Appellant's case is dramatically different in that the corroboration evidence indicated the actual presence of the substance he admitted using.

Appellant's case is actually more akin to United States v. Melvin.  The appellant there was arrested on June 13, 1985, in possession of heroin cigarettes and drug paraphernalia.  In his subsequent confession, he stated he had just left his friend's house, where he had smoked heroin cigarettes.  He admitted the friend was his drug source, and he admitted smoking heroin about twenty times over the previous four months.  He was ultimately charged with and convicted of numerous uses of heroin between February 1 and June 5, 1985.  The testimony of the police officers who arrested Melvin on June 13 as to what they found in his possession at the time of the arrest was offered to corroborate Melvin's confession.  This Court found that this evidence "created a strong inference of truth with regard to appellant's confession."  26 MJ at 147.

18

Similarly, in appellant's case, the drug screen report showed evidence of the presence of marijuana in appellant's system in late November. This certainly raised an inference that appellant had recently used the very substance he had confessed to using over the previous five or six weeks with the same people at the same residence. Furthermore, it strains credulity to believe that appellant would accurately confess to use of marijuana in the second or third week in November and then fabricate two other instances of use occurring in the preceding three or four weeks with the same individuals. In fact, appellant's initial denials to investigators suggest just the contrary – a desire to limit his criminal liability rather than increase it with false admissions.

CONCLUSION

We hold that the independent evidence of recent marijuana ingestion contained in the Armstrong lab report raised a sufficient inference of truth so as to corroborate appellant's confessed use of marijuana. Therefore, the military judge did not err in finding that appellant's confession was corroborated.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Grant, No. 01-0363/AF

SULLIVAN, Senior Judge (concurring):

I agree with the majority opinion in this case but have some difficulty squaring it with the majority opinion in United States v. Graham, 50 MJ 56 (1999). In both cases, evidence of a positive urinalysis test result was offered and admitted for a purpose other than to directly show the charged offense. In Graham, however, this Court held that evidence offered for such a purpose must still conform to the rules pertaining to urinalysis evidence delineated in Harper, Murphy, and Ford.[1] Id. at 59-60. The majority reaches a different conclusion today.

More particularly, in Graham, evidence of a prior positive test result for marijuana (in the form of cross-examination testimony by the accused) was offered for a purpose other than to show the charged offense. Evidence of a positive test result four years earlier was offered to impeach (or rebut) an accused who testified "there is no way I would knowingly use marijuana" and that he was "shocked, upset, and flabbergasted" by such a positive test result. See United States v. Graham, supra at 62-63 (Sullivan, J., joined by Crawford, J., dissenting). The

_____

[1] United States v. Harper, 22 MJ 157 (CMA 1986); United States v. Murphy, 23 MJ 310 (CMA 1987); United States v. Ford, 23 MJ 331 (CMA 1987).

majority there reasoned, <u>inter</u> <u>alia</u>, that this evidence was inadmissible because "none of the rules established by <u>Harper</u>, <u>Murphy</u>, and <u>Ford</u>, about the use of positive urinalysis results to prove knowing and wrongful use of marijuana, were followed as to the 4-year-old test result." <u>Id</u>. at 59.

    In appellant's case, evidence of a prior positive test result (in the form of a business record entry) was admitted for a purpose other than to directly show the charged offense.  It was admitted to <u>corroborate</u> appellant's confession to all the charged misconduct by proving some of the more recently charged drug misconduct included in that confession.[2]  <u>See</u> <u>United States v. Melvin</u>, 26 MJ 145 (CMA 1988).  As such, this evidence was before the members for their consideration, but not to directly prove the charged offense as in <u>Harper</u> and its progeny. <u>See</u> <u>United States v. Duvall</u>, 47 MJ 189, 192 (1997) (corroborating evidence to be considered by members on questions of weight to afford confession).  The majority, however, holds that the rules of admissibility delineated

---

[2] Appellant was charged with wrongfully using marijuana "on divers occasions, between on or about 15 October 1997 and on or about 23 November 1997."  The urinalysis evidenced in this case occurred on November 22, 1997, but the trial judge instructed the members that it could only be used to corroborate the confession. (R. 58-59, 156-57)

in <u>Harper</u>, <u>Murphy</u>, and <u>Ford</u> need not be complied with in these non-substantive circumstances.

In my view, today's decision, at least implicitly, erodes the holding of this Court in <u>Graham</u>, and I join it. <u>See</u> <u>United States v. Graham</u>, <u>supra</u> at 60-63 (Sullivan, J., joined by Crawford, J., dissenting).