UNITED STATES

v.

Master Sergeant Timothy L. MERRITT,
Sr., United States Air Force.

ACM 37608.

U.S. Air Force Court of Criminal Appeals.

Sentence adjudged 2 Sept. 2009.

14 Dec. 2012.

Appellate Counsel for the Appellant: Lieutenant Colonel Gail E. Crawford; Major Nicholas W. McCue; Captain Christopher D. James; and William E. Cassara, Esquire (civilian counsel).

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Martin J. Hindel; Major Deanna Daly; Major Naomi N. Porterfield; Captain Brian C. Mason; and Gerald R. Bruce, Esquire.

Before ROAN, CHERRY, and MARKSTEINER, Appellate Military Judges.

## OPINION OF THE COURT

ROAN, Senior Judge:

Contrary to his pleas, a military judge sitting as a general court-martial convicted the appellant of one specification of receiving visual depictions of minors engaging in sexually explicit conduct and one specification of viewing depictions of minors engaging in sexually explicit conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The appellant was sentenced to a bad-conduct discharge, confinement for 24 months, and reduction to E–2. The convening authority approved the sentence as adjudged. On appeal, the appellant asserts five errors: (1) the military judge erred by finding the appellant's confession to be sufficiently corroborated, (2) the appellant's constitutional right to fair notice was violated when he was charged with and convicted of viewing child pornography, (3) the military judge erred by repeatedly permitting hearsay evidence to be introduced over his objection, (4) the military judge abandoned her role as an impartial and neutral arbiter, and (5) the appellant's due process rights were violated when the Government took nearly two years to bring court-martial charges to trial. Finding no merit to the appellant's assignments of error, we affirm the findings and sentence.

### Background

The appellant was stationed at Spangdahlem Air Base, Germany. In October 2006, the German police initiated an investigation into suspected child pornography being sent and received over the Internet. During the course of the investigation, the appellant was identified by a German Internet service provider (ISP) as a potential recipient of child pornography. The investigators contacted the Air Force Office of Special Investigations (OSI) at Spangdahlem with their findings. The OSI, in turn, began its own investigation. On 13 September 2007, Special Agent (SA) Davis interviewed the appellant, who, after a proper rights advisement, agreed to make a statement. The appellant said that, while searching the Internet for adult pornography of "Hispanic and Asian women," he came across banners and pop-up advertisements depicting "young individuals, under 18, in sexual poses or having oral intercourse." The appellant admitted to intentionally clicking on the banners and pop-ups as well as viewing images portraying minors engaging in various sexual activities. Following his verbal admission, the appellant provided a written statement, describing in detail the 19 pornographic images he observed. He esti-

mated that the children in the various pictures were between 3 and 17 years of age.

On 17 September 2007, the German police seized two tower computers, a laptop computer, a gaming console, a router, and a modem from the appellant's apartment. SA Davis accompanied the German police during the search and observed the officers take the computers and place a white sticker on each item seized. On 17 October 2007, SA Davis took possession of the seized items from the German police. SA Davis testified that the white stickers he previously observed were still attached and the items were in the same general condition as when he observed the officers taking them from the appellant's apartment. Forensic copies of the computer hard drives were created and sent to a computer forensic company for analysis. The analyst, Ms. Carol Peden, testified at the court-martial. She said that, along with the laptop and two internal hard drives, she received paperwork detailing the OSI case number, the appellant's name, and the items to be analyzed. During her analysis, she found evidence of suspected child pornography on one of the internal hard drives, along with a computer profile named "merritttl." She further testified that the forensic data showed the computer user had "accessed porn sites concerning Asian women and then followed redirects, pop-ups, or links to other types of sites, some containing terminology indicating child porn."

*Corroboration of the Appellant's Statement*

As he did at trial, the appellant argues on appeal that his statement to OSI was not sufficiently corroborated to be admitted into evidence. Specifically, the appellant asserts that, because the Government failed to maintain an adequate chain of custody from the time the hard drive was seized by the German police to the point it was returned to OSI, it was possible that the police might have given OSI the wrong hard drive or even potentially altered the evidence on the drive itself, rendering the evidence recovered from the hard drive unreliable.

 We review a military judge's decision to admit an appellant's confession applying an abuse of discretion standard, *United States v. Young*, 49 M.J. 265, 266–67

(C.A.A.F.1998), and accept the military judge's findings of fact unless they are clearly erroneous. *United States v. Ford*, 51 M.J. 445, 451 (C.A.A.F.1999). Admission of a confession into evidence is governed by Mil. R. Evid. 304(g): "An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent facts, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth." In meeting the corroboration requirement, the Government is not required to provide independent evidence of all the elements of an offense. Rather, it need only provide such evidence that raises an inference of the truth as to the essential facts admitted. The reliability of the essential facts need not be proved beyond a reasonable doubt or by a preponderance of the evidence. *United States v. Baldwin*, 54 M.J. 464, 465 (C.A.A.F.2001) (citations omitted). Our superior court has held the quantum of evidence needed to fulfill the corroboration requirement is very slight. *United States v. Grant*, 56 M.J. 410, 416 (C.A.A.F.2002). Mil. R. Evid. 304(g) does not require the Government to prove the existence of a chain of custody in order to corroborate a confession. *Id.* Rather, the fact finders are free to either accept or reject such evidence in determining the weight to be given the confession. *Id.* (citing *United States v. Duvall*, 47 M.J. 189 (C.A.A.F.1997)). Applying the requisite standards to this case, we find the appellant's statement to OSI was sufficiently corroborated to meet the requirements of Mil. R. Evid. 304(g).

After hearing argument on the issue, the military judge made detailed findings of fact which were not clearly erroneous and we adopt them as our own. SA Davis observed the German police remove computer equipment from the appellant's apartment and place a white sticker on the items seized. He took possession of these same items approximately one month later. He testified that the objects appeared to be in the same general condition as when they were taken by the German police. The forensic analysis of the hard drive indicated that the user had

searched for adult pornography with files containing "Asian sounding names and Anime porn, which is associated with Asian culture." This description comports with the appellant's statement that he was looking for adult pornography of an Asian nature.

The analyst's conclusion that the user "had followed links or pop-ups from adult sites to other types of sites, some containing terminology indicating child porn," was consistent with the appellant's admission that he followed links and pop-up ads that eventually led to pictures of child pornography. Ms. Peden's statement that she recovered 17 pictures from the unallocated space on the hard drive—indicating they had been previously deleted—was in agreement with the appellant's admission that he deleted the pictures after viewing them. Further, Ms. Peden's description of the pictures was entirely consistent with the expressive depictions provided by the appellant in his written statement to OSI. Finally, the Yahoo user profile, entitled "merritttl," corresponded with the appellant's last name and first and middle initials. Based on these facts, we are convinced the Government provided the requisite quantum of independent evidence required to corroborate the appellant's confession.

### Notice

Specification 2 of the Charge reads:

In that [the appellant] did, at or near Spangdahlem Air Base, Germany, on divers occasions, between on or about 6 May 2006 and on or about 13 May 2006, wrongfully and knowingly view one or more visual depictions of minors engaging in sexually explicit conduct, which conduct was prejudicial to good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.[1]

On appeal, the appellant claims, as he did at trial, that he was unaware that the private viewing of children engaging in sexual activities could constitute criminal misconduct. Specifically, because the offense of "viewing child pornography" was not enumerated in the UCMJ or listed as an offense under Title 18, United States Code, he avers he was not placed on fair notice that such conduct could be service discrediting and therefore subject to criminal sanctions.

It is well settled under military law that a service member may be prosecuted for a service discrediting offense even if that conduct is not specifically listed in the *Manual for Courts-Martial. United States v. Saunders,* 59 M.J. 1, 6 (C.A.A.F.2003). However, as a matter of due process, the member must have fair notice that his conduct is punishable before he can be convicted under Article 134, UCMJ. *United States v. Bivins,* 49 M.J. 328, 330 (C.A.A.F.1998). We look to the "[*Manual* ], federal law, state law, military case law, military custom and usage, and military regulations" to determine if such notice has been provided. *United States v. Vaughan,* 58 M.J. 29, 31 (C.A.A.F.2003).

In doing so in the case before us, we find a sufficient basis exists to find the appellant knew, or should have known, that his conduct was service discrediting. First, in his statement to OSI, the appellant disclosed: "These images I have tried to forget ... I am deeply a shamed (sic) for having even looked at such images ... It is to great horror that [I] have to recall these images that I tried so hard to forget seeing." Such an admission is powerful evidence that the appellant was fully aware that viewing child pornography could call the Air Force into disrepute and thereby violate the UCMJ.

Military case law further supports our conclusion. In *United States v. Sapp,* 53 M.J. 90 (C.A.A.F.2000), the appellant was charged with violating Clause 3 of Article 134, UCMJ, by wrongfully and knowingly possessing three or more visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. 2252(a)(4)(A). Although the appellant's guilty plea was found improvident because the military judge failed to adequately advise him of the elements of the offense, the Court of Appeals for the Armed Forces (CAAF) affirmed his conviction as a violation of service discrediting conduct under Article 134, UCMJ, Clause 2. In doing so, the Court stated: "We have no doubt that the knowing possession of images depicting

---

1. By exceptions, the appellant was found guilty of the specified conduct as being service discrediting under Clause 2 of Article 134, UCMJ, 10 U.S.C. § 934.

sexually explicit conduct by minors when determined to be service-discrediting conduct, is a violation of Article 134," UCMJ. *Id.* at 92. *See also United States v. Irvin,* 60 M.J. 23 (C.A.A.F.2004) (upholding a guilty plea to possession of visual depictions of minors engaging in sexually explicit conduct as violating Clause 1 or Clause 2 of Article 134, UCMJ). We can find no logical distinction between the knowing possession and the viewing of such images with regard to the service discrediting nature of the act. Indeed, CAAF itself seemed to recognize that viewing child pornography could be prosecuted as an Article 134, UCMJ, Clause 2 offense in *United States v. Medina,* 66 M.J. 21, 27 (C.A.A.F.2008), where, in dicta, the Court said, "It is intuitive that the viewing of child pornography discredits those who do it, as well as the institutions with which the persons are identified." [2]

Various federal circuits have held that the act of viewing child pornography violated the Child Pornography Prevention Act, 18 U.S.C. §§ 2251–60, even though "viewing" was not specifically listed in the statute until 2008.[3] *See, e.g., United States v. Pruitt,* 638 F.3d 763, 766–67 (11th Cir.2011) ("A person 'knowingly receives' child pornography under 18 U.S.C. § 2252A(a)(2) when he intentionally views, acquires, or accepts child pornography on a computer from an outside source," whether or not he "acts to save the images to a hard drive, to edit them, or otherwise to exert more control over them." (citations omitted)); *United States v. Bass,* 411 F.3d 1198, 1201–02 (10th Cir.2005) (affirming conviction for knowing possession where child pornography files viewed on the Internet were automatically saved to hard drive).

Finally, the Supreme Court has concluded that states can constitutionally proscribe the possession *and viewing* of child pornography

on the basis the state "had a compelling interest[ ] in protecting the physical and psychological well-being of minors and in destroying the market for the exploitative use of children by penalizing those who possess and view the offending materials." *Osborne v. Ohio,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (citations omitted).

When taking the case law and the appellant's own characterization of the horrors associated with child pornography into account, we have no difficulty concluding the appellant was on notice of the service discrediting nature of his conduct.

*Hearsay*

The appellant insists the military judge repeatedly relied on inadmissible hearsay to ultimately conclude that the hard drive examined by Ms. Peden was a forensic copy of the drive belonging to the appellant. Specifically, the appellant argues the information given by the ISP to the German police concerning the user name and internet protocol address of an individual suspected of receiving child pornography was improperly considered. Likewise, the appellant contends the military judge erred by permitting SA Davis to testify about what he was told by the German police regarding three U.S. military members who were being investigated for receipt of child pornography. He further complains the military judge improperly permitted the Government's expert to testify as to what she was told concerning the media she examined and how it was allegedly connected to the appellant. Finally, the appellant argues the Government's expert relied on improper hearsay to conclude that the forensic copy of the hard drive she examined matched the drive seized by the police.

 A military judge's decision to accept evidence is evaluated for an abuse of

---

**2.** We differentiate this case from *United States v. Navrestad,* 66 M.J. 262 (C.A.A.F.2008). In *Navrestad,* the appellant was initially charged with possession and distribution of child pornography, in violation of 18 U.S.C. § 2252A, pursuant to Clause 3 of Article 134, UCMJ. The charges were later amended to include violations of Clauses 1 and 2 of Article 134, UCMJ. Our superior court held that, under the facts of that case (viewing child pornography on a public computer), the appellant lacked the "dominion and control nec-

essary to constitute 'possession' of the child pornographic images." *Navrestad,* 66 M.J. at 268. In the case before us, the issue is not whether the appellant possessed the images, but whether he was on notice that viewing them constituted service discrediting behavior. We find that it does.

**3.** 18 U.S.C. § 2252A was amended in 2008 to add viewing of child pornography as a listed offense.

discretion. *See United States v. Billings*, 61 M.J. 163, 166 (C.A.A.F.2005). In response to repeated hearsay objections by trial defense counsel, the military judge made findings of fact and conclusions of law regarding the admissibility of the appellant's statement and the pictures recovered from the hard drive. In doing so, the military judge explained that she considered the various statements mentioned above not for the truth of the matter asserted, but to determine the impact on the listener or to determine whether the appellant's admission was corroborated by independent evidence. Her conclusions are reasonable and well grounded in the law of hearsay. We concur with her judgment.

▮▮▮ It is clear from the record that the statements objected to at trial were not used by the Government to prove their truth, but rather to ascertain why various steps were being taken (i.e., why OSI undertook its own investigation that resulted in the appellant being interviewed and whether the verbal and written admissions given to the investigatory agent were corroborated). Further, Ms. Peden's testimony about what she was told at the time she examined the appellant's hard drive was not hearsay because it explained why she was examining the hard drive in the first place. More importantly, her subsequent testimony at trial did not rely upon what she was told by SA Davis, but rather described what she specifically found after examining the drive, testimony the appellant was fully able to cross-examine at trial.

The appellant's contention that the military judge relied upon impermissible hearsay to conclude that Ms. Peden examined an exact forensic copy of the hard drive taken from the appellant's apartment is incorrect. Ms. Peden testified that she compared the hash values of the original and copied hard drives to determine if the two drives were forensically identical. She explained that hash values are created by software when a forensic copy is made from the original. Such machine-generated data does not constitute hearsay. *United States v. Sweeney*, 70 M.J. 296 (C.A.A.F.2011) ("[I]t is well-settled that under both the Confrontation Clause and the rules of evidence, machine-generated data and printouts are not statements and thus not hearsay-machines are not declarants-and such data is therefore not testimonial.") (quoting *United States v. Blazier*, 69 M.J. 218, 224 (C.A.A.F.2010) (internal quotation marks omitted)). We are convinced that the military judge did not misapply the rules of hearsay.

*Impartiality of the Military Judge*

The appellant argues that the military judge abandoned her role as an impartial and neutral arbiter and became a partisan advocate for the prosecution. The appellant asserts the military judge provided repeated assistance and instruction to the trial counsel concerning evidentiary processes and permitted the Government to correct deficiencies in its case. After a full review of the record, we find no merit to the appellant's complaint.

▮▮▮ When a military judge's impartiality is questioned on appeal, we must determine whether, taken as a whole in the context of trial, a court-martial's legality, fairness, and impartiality were put into doubt from the objective viewpoint of a reasonable person. *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F.1995). There is a strong presumption that a military judge is impartial in the conduct of judicial proceedings. *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F.2001). A party seeking to demonstrate bias must overcome a high hurdle, particularly when the alleged bias involves actions taken in conjunction with judicial proceedings. *Id.* The military judge may be an active participant in the proceedings, but "must take care not to become an advocate for either party." *United States v. Foster*, 64 M.J. 331, 332-33 (C.A.A.F.2007). A defense failure to object at trial to alleged partisan action by the military judge "may present an inference that the defense believed that the military judge remained impartial." *Id.* at 333.

▮▮▮ In the case before us, it is important to appreciate that the military judge was also the fact finder. As such, she was entitled to question witnesses and examine the strength and weakness of the evidence presented at the court-martial. Article 46, UCMJ, 10 U.S.C. § 846, affords "equal op-

portunity" to trial counsel, defense counsel, and the court-martial to "obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." *See also* Mil. R. Evid. 614 (A military judge may "interrogate witnesses, whether called by the military judge, the members, or a party."). Throughout the trial, trial defense counsel strenuously challenged the evidentiary foundations of the Government's evidence. A military judge "can and sometimes must ask questions in order to clear up uncertainties in the evidence or to develop the facts further." *Ramos,* 42 M.J. at 396 (citations omitted). The military judge in this case did nothing more than this. Her questions were designed to understand the issues and ascertain the evidence necessary to resolve the legal matters raised by the defense and to make an informed decision regarding the appellant's guilt or innocence. Additionally, although not mentioned by the appellant in his brief, the military judge denied the trial counsel's request to admit several of the pictures recovered from the hard drive into evidence, finding the uncertainty surrounding their date of creation made their admission unfairly prejudicial—verification that the military judge was not a partial advocate for the Government.

After a full review of the record, we find the military judge maintained her "fulcrum position of impartiality" and her questions of the witnesses "did not suggest any judicial preference or belief." *United States v. Acosta,* 49 M.J. 14, 18 (C.A.A.F.1998). We are satisfied that a reasonable person viewing the trial would not have had any doubts about the fairness of the trial. The appellant has failed to meet his high hurdle to show the military judge abandoned her role as an impartial arbiter.

### Denial of Speedy Trial

■■■■ The appellant asserts that his right to due process under the Fifth Amendment [4] was denied because almost two years elapsed from the time the evidence of child pornography was discovered until his trial began. Absent restraint, the "primary guarantee" against pre-accusation delay is the statute of limitations provided by Article 43,

UCMJ, 10 U.S.C. § 843. *United States v. Reed,* 41 M.J. 449, 451 (C.A.A.F.1995) (quoting *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). However, the Due Process Clause of the Fifth Amendment "may be applicable to protect an accused against egregious trial delays." *United States v. Vogan,* 35 M.J. 32, 34 (C.M.A.1992). In order to prevail on such a claim, appellant's bear the burden of showing first, the Government engaged in an egregious or intentional tactical delay, and second, the appellant suffered actual prejudice as a result. *Reed,* 41 M.J. at 452.

■■■■ With respect to the first prong, the appellant states the Government "delayed, charged, withdrew charges and re-charged without any change in the key evidence from April 2008 until trial on August 31, 2009," ostensibly because the Government was unable to find sufficient evidence to link him with the hard drive examined by the Government's expert. The appellant fails to provide evidence that the Government sought to intentionally delay his case for the purpose of gaining a tactical advantage or hampering his defense. The appellant's argument that the delays were requested because the Government could not perfect its case amounts to conjecture. Speculation by the accused on either prong of the test is insufficient to show a due process violation. *Reed,* 41 M.J. at 452.

Likewise, the appellant has failed to show how he was actually prejudiced by the delay. He claims to have suffered prejudice because the Government was "given multiple bites at the apple.... [A]fter sitting for two years, the lapse of time, the loss of witnesses, the fading of memories and evidence of mishandling, if not adulteration of key evidence raises more questions than it answers." He continues by stating that key witnesses "who could testify about how [the appellant] was identified as a person contacting a web server hosting child pornography were no longer available." Similarly, he now contends that witnesses who could explain how the hard drive suddenly appeared during the transition of evidence from the German police to OSI were not available. As with the

---

4. U.S. Const. amend. V.

first prong, the appellant's claims are not supported by evidence presented at trial. Trial defense counsel did not raise this issue with the military judge and, in fact, did not attempt to call a single witness from either the ISP or the German police in his case-in-chief to support this new claim. The trial record is simply bereft of facts to bolster his argument that witnesses favorable to the appellant were unavailable for any reason, much less due to the two-year gap between collection of evidence and the trial. We find the appellant failed to meet his burden of showing a due process violation.

*Appellate Delay*

In this case, the overall delay of more than 540 days between the trial and completion of review by this Court is facially unreasonable. Because this delay is unreasonable, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):(1) the length of the delay, (2) the reasons for the delay, (3) the appellant's assertion of the right to timely review and appeal, and (4) prejudice. *United States v. Moreno*, 63 M.J. 129, 135–36 (C.A.A.F.2006). When we assume error but are able to directly conclude that any error was harmless beyond a rea-

sonable doubt, we do not need to engage in a separate analysis of each factor. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). This approach is appropriate in the appellant's case.

Having considered the totality of the circumstances and the entire record, we conclude that any denial of the appellant's right to speedy post-trial review and his appeal was harmless beyond a reasonable doubt and that no relief is warranted.

*Conclusion*

The approved findings and the sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant remains. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.