# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Airman Basic WAYDE A. WEISLEDER, JR.
### United States Air Force

### ACM S32243

### 26 October 2015

Sentence adjudged 7 March 2014 by SPCM convened at Joint Base Pearl Harbor-Hickam, Hawaii. Military Judge: Gregory O. Friedland.

Approved Sentence: Bad-conduct discharge, confinement for 45 days, and reduction E-1.

Appellate Counsel for the Appellant: Major Christopher D. James and Major Thomas A. Smith.

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

TELLER, HECKER, and SANTORO
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A special court-martial composed of officer members convicted Appellant, contrary to his pleas, of making false official statements, wrongful sale and disposition of military property, wrongful use of cocaine, larceny of military property, and wrongful appropriation, in violation of Articles 107, 108, 112a, and 121, UCMJ, 10 U.S.C. §§ 907, 908, 912a, 921. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 45 days, and reduction to E-1.

Appellant argues that (1) the military judge abused his discretion by denying his motion to exclude statements and evidence obtained after he self-identified his drug abuse, and (2) the military judge abused his discretion by admitting the results of a drug test to corroborate his confession. Both issues are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We disagree and affirm.

*Background*

Appellant became addicted to oxycodone and cocaine. To pay for the drugs, he sold and pawned various items of military property during March and April 2013, including night vision goggles, a gas mask, a Kevlar helmet, portions of flak jackets, and body armor plates. When Security Forces began investigating the missing items, Appellant initially (and falsely) told them he had not seen another Airman's night vision goggles on the day they were discovered missing. During a second interview, he admitting taking two sets of goggles but falsely stated he sold them for cash when, in fact, he had traded them to obtain controlled substances. Further investigation revealed Appellant had pawned multiple items of military property at local pawnshops.

On 9 May 2013, the day after making the second false statement, Appellant contacted his flight chief, Technical Sergeant (TSgt) CW. He told TSgt CW he was thinking about committing suicide and needed help. TSgt CW immediately went to Appellant's dormitory room, spoke briefly with Appellant, and noted that Appellant was looking "very pale, weak, and just not well." As TSgt CW was driving Appellant to speak with the first sergeant, he asked Appellant if he was taking drugs, as he was concerned the Appellant may have overdosed. Appellant said that he had used oxycodone. In his testimony at trial, Appellant said he called TSgt CW because he respected him and wanted TSgt CW to "point [him] in the right direction to get help." When they arrived at the first sergeant's office, Appellant told him that he was addicted to oxycodone.

TSgt CW took Appellant to the mental health clinic. Outside the presence of TSgt CW, Appellant told the mental health providers that he was addicted to oxycodone and added that he had used cocaine the previous evening. Following his evaluation by mental health providers, Appellant was taken to the Tripler Army Medical Center emergency room for evaluation. While at Tripler, Appellant provided a urine sample as part of a standard drug screen performed when admitting psychiatric patients. This sample presumptively tested positive for the metabolite of cocaine.

Several days later, under rights advisement, Appellant told military investigators he had used oxycodone but did not admit to using cocaine. In August 2013, he admitted to investigators that he had used cocaine on the night before his contact with TSgt CW and also admitted that he traded the two sets of night vision goggles for oxycodone pills.

Appellant was charged with, inter alia, wrongful use of cocaine. To prove this charge, the Government presented evidence of Appellant's admission to military investigators. In order to corroborate this admission, the Government presented evidence of the positive result of his drug screen test. Appellant was not charged with using oxycodone, but the defense argued he could not form the intent to commit the other crimes due to his ongoing addiction to that drug.

Additional facts necessary to resolve the assigned errors are included below.

*Self-Identification*

Appellant argues his statements to TSgt CW about his illegal drug use were his attempt to self-identify for the purpose of seeking assistance, pursuant to Air Force Instruction (AFI) 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program* (11 April 2011), and, therefore, neither those statements nor any evidence derived therefrom could be admitted against him.

The version of AFI 44-121 in effect at the time of trial provided that "members with [substance abuse, including drug abuse] problems are encouraged to seek assistance from the unit commander, first sergeant, [substance abuse] counselor, or a military medical professional." AFI 44-121, ¶ 3.7. Military members who reveal this information with the intention of entering drug treatment receive certain limited protection from criminal prosecution as commanders are prohibited from using a member's voluntary disclosure of drug use against him in an action under the UCMJ. *Id.* at ¶¶ 3.7.1.2, 3.7.1.3. The limited protections provided by the AFI are limited to "voluntary disclosures." The AFI states that a disclosure is not voluntary if the member has previously been "placed under investigation for drug abuse." *Id.* at ¶ 3.7.1.4.2. A determination of whether an individual has been "placed under investigation" status is made based on the circumstances of each individual case. *Id.* For example, a member is considered under investigation when he or she has been questioned about drug use by investigative authorities or the member's commander, or when an allegation of drug use has been made against the member. *Id.*

The military judge found that Appellant's first disclosure of his drug use was to TSgt CW and that TSgt CW was Appellant's flight chief, not his first sergeant. The military judge further found that Appellant's disclosures to military medical providers followed his non-protected disclosure to TSgt CW. Based on these factual findings, the military judge concluded that Appellant's statements to TSgt CW, and all subsequent statements, were not protected by the "self-identification" provisions.

We review a military judge's denial of a motion to suppress for an abuse of discretion. *United States v. Monroe*, 52 M.J. 326, 330 (C.A.A.F. 2000). The military

judge's fact-finding is reviewed under a clearly-erroneous standard and his conclusions of law are reviewed de novo. *Id.*

Appellant does not dispute the military judge's factual findings. Rather, he argues that, because Airmen are generally encouraged to address issues at the lowest possible level of the chain of command, Appellant's initial disclosure to his flight chief should be protected just as if he had made it to his first sergeant. He further urges us not to adopt a strict interpretation of the self-identification provisions, in order to encourage Airmen to seek the help they need.

The sanctuary provisions in AFI 44-121 are a creature of regulation. As such, and in keeping with the canons of statutory construction, we assume that the drafters of the regulation meant what they said as they wrote language designed to provide certain protections that Airmen otherwise would not have. *See United States v. Estrada*, 69 M.J. 45, 47 (C.A.A.F. 2010) ("In interpreting regulations, we apply the general rules of statutory construction."). Under the canon of statutory construction "expressio unius est exclusio alterius" (the inclusion of one is the exclusion of others), we must presume that the exclusion of individuals beyond those specifically listed in the instruction was intentional. *See United States v. Cline*, 29 M.J. 83, 86 (C.M.A. 1989); *Chevron U.S.A. v. Echazabal*, 536 U.S. 73, 81 (2002) (holding "a series of two or more . . . things that should be understood to go hand in hand . . . support[s] a sensible inference that the term left out must have been meant to be excluded"). So long as the protections provided do not violate the Constitution or statutes or conflict with other regulations, it is not our place to opine on the soundness of the Secretary's policy decision to limit the sanctuary to disclosures made only to certain persons.

We therefore find that Appellant did not self-identify to TSgt CW within the parameters of AFI 44-121. Furthermore, we find that once Appellant made that non-covered disclosure to his flight chief, he was effectively "placed under investigation" for using drugs. Thus, his subsequent statements about using cocaine were also not within the parameters of the self-identification provisions.

*Corroboration*

As he did at trial, Appellant argues that the military judge erred by admitting the results of the Tripler Army Medical Center urine drug screen as a business record for the limited purpose of corroborating his confession to using cocaine. He asserts that the report constituted testimonial hearsay and, therefore, violated his Sixth Amendment right to confront the witnesses against him.[1]

---

[1] U.S. CONST. amend VI.

A military judge's decision to admit evidence is reviewed under an abuse of discretion standard. *United States v. Clayton*, 67 M.J. 283, 286 (C.A.A.F. 2009). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). "[O]n a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995).

However, whether the admitted evidence violates the Confrontation Clause of the Sixth Amendment is reviewed de novo. *United States v. Blazier*, 68 M.J. 439, 442 (C.A.A.F. 2010) [hereinafter *Blazier I*]. If we find a violation of the Confrontation Clause, we cannot affirm the conviction unless we are convinced beyond a reasonable doubt that the error was harmless. *United States v. Rankin*, 64 M.J. 348, 353 (C.A.A.F. 2007).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Therefore, "no testimonial hearsay may be admitted against a criminal defendant unless (1) the witness is unavailable, and (2) the witness was subject to prior cross-examination." *United States v. Blazier*, 69 M.J. 218, 222 (C.A.A.F. 2010) [hereinafter *Blazier II*] (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). The Sixth Amendment bars only testimonial statements because "[o]nly statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

An uncorroborated confession is insufficient to sustain a conviction.

> (1) An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that corroborates the essential facts admitted to justify sufficiently an inference of their truth.

> (2) Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence.

Mil. R. Evid. 304(c);[2] *see also United States v. Adams*, 74 M.J. 137, 140–41 (C.A.A.F. 2015) (holding the corroboration requirement applies to *each* essential fact contained in the admission that the government wants to admit into evidence). Therefore, if admission of the laboratory result violated the Confrontation Clause, Appellant's confession was uncorroborated and insufficient to sustain his conviction of using cocaine.

In denying the defense motion to suppress, the military judge made the following findings of fact, which are supported by the record and not clearly erroneous:

> [One, o]n 9 May[ 2013,] the accused called [TSgt CW], saying he was having suicidal ideations. Two, recognizing the exigency of the situation, [TSgt CW] drove to the accused's dorm to provide an in person response to the phone call. Three, concerned that the accused may have ingested medication, he asked the accused if he had taken any drugs. Four, the accused responded, yes, oxycodone, oxycontin, was the identified drug. Five, they went to the unit first sergeant, and relayed [the] same information to him. Six, the first sergeant directed them to mental health. Seven, at mental health the accused disclosed his addiction to drugs and disclosed he had done cocaine the night prior. Eight, next the flight chief took the accused to Tripler Army Medical Center for treatment. Nine, upon arriving at Tripler, the accused provided a urine sample for testing, for medical diagnosis. Ten, that urine sample tested positive for cocaine or the metabolites of cocaine. This positive result was relayed back to the [emergency room] personnel for treatment. Eleven, this positive result, a presumptive positive, was recorded in the accused's medical records at the 15th Wing.

Based upon these factual findings, and after citing and analyzing the applicable law on drug testing and the Confrontation Clause, the military judge concluded as a matter of law that the drug testing report was non-testimonial and therefore its admission did not violate the Sixth Amendment. He further found that the report was admissible as

---

[2] Through an executive order signed on 15 May 2013, the President implemented a complete revision of the Military Rules of Evidence. What had been Mil. R. Evid. 304(g) was moved to what is now Mil. R. Evid. 304(c)(2). The new rule uses the phrase "has been admitted into evidence" instead of the phrase "has been introduced." However, this is not a substantive change as there has been a longstanding requirement that the corroborating evidence be admitted into evidence. *See United States v. Duvall*, 47 M.J. 189, 191–92 (C.A.A.F. 1997); *United States v. Adams*, 74 M.J. 137, 139 n.6 (C.A.A.F. 2015) (noting that Mil. R. Evid. 304(c) remains substantively the same as Mil. R. Evid. 304(g)). Furthermore, the revised rule uses the words "admitted" and "introduced" interchangeably. *Cf.* Mil. R. Evid. 304(c)(2) and 304(c)(5).

a business record[3] and instructed the members prior to their deliberations that the results were admitted for the limited purpose of corroborating Appellant's confession and could not be used as substantive evidence of his guilt.

In *United States v. Katso*, 74 M.J. 273 (C.A.A.F. 2015), our superior court again reiterated the distinction between testimonial and non-testimonial hearsay:

> [A] statement is testimonial if made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. In making this determination, this Court has asked whether it would be reasonably foreseeable to an objective person that the purpose of any individual statement . . . is evidentiary, considering the formality of the statement as well as the knowledge of the declarant.

*Id*. at 279 (internal quotation marks and citations omitted) (alterations in original).

In *United States v. Grant*, 56 M.J. 410 (C.A.A.F. 2002), the government attempted to admit a laboratory report for the limited purpose of corroborating the accused's confession to ingesting drugs. A physician ordered a drug screen as part of the accused's treatment but did not realize that the local hospital could not conduct such testing. *Id.* at 412. The testing was instead performed by the epidemiology division of an Air Force laboratory at a different base and revealed cannabinoids in his urine. *Id.* Because a qualified witness from the local hospital testified that the hospital obtained and kept the report in the normal course of its business and relied upon its accuracy in making treatment decisions for patients, our superior court found the laboratory report was admissible as a hospital business record despite the lack of testimony from laboratory personnel. *Id*. at 414.

The accused in *Grant* was not suspected of any offense at the time his sample was obtained and there was no dispute that the sample was obtained for purposes of medical diagnosis and treatment. Here, the military judge made factual findings that Appellant was taken to the hospital for treatment, that the urine sample was provided for medical diagnosis, and that the positive result was relayed to the emergency room staff and factored into their treatment decisions. These all support the military judge's conclusion that Appellant's testing and report are not meaningfully distinguishable from that found

---

[3] "Records of regularly conducted activity" (commonly referred to as "business records") which are created by an entity on a consistent and routine basis under methods and circumstances indicating trustworthiness are not excluded by the hearsay rule regardless of whether the declarant is available as a witness. Mil. R. Evid. 803(6). Because of the regular and routine circumstances of their creation, such business records are generally not testimonial and thus can be admitted without confrontation clause concerns. *Crawford v. Washington*, 541 U.S. 36, 56 (2004).

in *Grant* and were thus admissible as business records of the Tripler Army Medical Center.

Moreover, we find, as did the military judge, that these facts would not lead an objective person to believe that the purpose of testing the urine sample was evidentiary as opposed to medical. *See United States v. Sweeney*, 70 M.J. 296 (C.A.A.F. 2011); *Blazier II*, 68 M.J. at 442 (holding that a statement is testimonial if it would be reasonably foreseeable to an objective person that the purpose of the statement in a drug testing report is evidentiary and would be available for use at a later trial). There is no evidence that the command or investigators requested that hospital personnel conduct a urinalysis or any other testing.[4] Therefore, we concur with the military judge that the results derived from the testing of that sample were not testimonial hearsay.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[4] In *United States v. Tearman*, 72 M.J. 54, 59 (C.A.A.F. 2013), in determining whether the challenged evidence was testimonial, our superior court considered whether the evidence was initiated without an external request and before charges were preferred. The fact that a document is later introduced at trial does not prove that it was intended as testimonial at the time it was made. *Id.* at 59–60; *see also United States v. Magyari*, 63 M.J. 123, 127 (C.A.A.F. 2006) (finding lab reports were not prepared at the behest of law enforcement in anticipation of prosecution and therefore not testimonial). It is not disputed that Tripler Army Medical Center's emergency room's regular business activity is not "the production of evidence for use at trial." *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321, 324 (2009).