**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman LUIS A. SOLIS**
**United States Air Force**

**ACM S32160**

**30 July 2015**

Sentence adjudged 26 April 2013 by SPCM convened at Shaw Air Force Base, South Carolina. Military Judge: Lynn Schmidt.[1]

Approved Sentence: Bad-conduct discharge, confinement for 6 months, forfeiture of $1000.00 pay per month for 6 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis (argued) and Captain Travis L. Vaughan.

Appellate Counsel for the United States: Captain Richard J. Schrider (argued); Colonel Katherine E. Oler; Lieutenant Colonel C. Taylor Smith; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and MITCHELL
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

A special court-martial composed of officer members convicted the appellant, contrary to his pleas, of violating a lawful general order by using spice, distributing marijuana, wrongfully appropriating military property, and distributing spice, in violation

---

[1] The military judge's name in this case is now Lynn Watkins due to a change in marital status.

of Articles 92, 112a, 121, and, 134, UCMJ, 10 U.S.C. §§ 892, 912a, 921, 934.  The court sentenced him to a bad-conduct discharge, confinement for 6 months, forfeiture of $1,000 pay per month for six months, and reduction to E-1.  The convening authority approved the sentence as adjudged.

On appeal, the appellant contends the military judge abused her discretion by (1) denying his motion to suppress a drug test report on confrontation clause grounds, (2) failing to give a limiting instruction to the panel regarding the use of that report, (3) denying a defense request to travel its expert witness, (4) denying a defense request for discovery, and (5) denying a defense challenge for cause against a panel member.  We also address whether the time between docketing with this court and the date of this opinion amounts to unreasonable post-trial delay that warrants relief.

We heard oral argument[2] on the following issue:

> Whether the results of scientific testing admitted as a business record under Military Rule of Evidence 803(6) for the limited purpose of corroborating an accused's confession under Military Rule of Evidence 304(g) must comply with the confrontation clause requirements applicable to evidence submitted on the substantive issue of wrongful involvement with drugs, and, if so, whether the admission of the test results in this case complied with those requirements.

Finding prejudicial constitutional error, we dismiss Charge I and its three specifications and Charge IV and its specification.  We affirm the remaining charges and reassess the sentence accordingly.

*Background*

The appellant became the subject of an investigation by the Air Force Office of Special Investigations (AFOSI) in December 2012 after another military member reported the appellant had contacted him to ask about buying marijuana.  At the request of AFOSI, the military member contacted the appellant, and the appellant agreed to sell marijuana to the informant at an off-base location on 18 December 2012.

AFOSI provided the military member with $60 in marked bills, and he went to the pre-arranged location.  The appellant arrived in his car, walked up to the other military member's vehicle, and the two men made the exchange.  When the appellant returned to

---

[2]  Oral argument in this case was heard at the George Washington University School of Law, in Washington, D.C., on 23 February 2015, as part of the court's Project Outreach.  Members of the law school's Military Law Society participated in the argument as amici curiae.

his car, he was apprehended by AFOSI agents and law enforcement personnel from the Sumter County (South Carolina) Sheriff's Office. The appellant's civilian roommate was also in his car. When AFOSI agents searched those present at the scene of the transaction, the appellant was in possession of the marked bills, and the confidential informant was in possession of a green leafy substance that field tested positive for marijuana.

Under rights advisement, the appellant made several admissions about his involvement with marijuana and the intoxicant "spice." A search of the appellant's car and his residence revealed several containers containing green leafy substances. The testing of the contents of a container found in his residence was admitted as corroboration of the appellant's confession and forms the basis of the appellant's confrontation clause issue.

Following a litigated trial, the appellant was convicted of violating a lawful general order or regulation by using spice on divers occasions between 15 April 2010 and 19 December 2012, and possessing spice on 19 December 2012.[3] He was also convicted of distributing spice on one occasion between 11 April 2011 and 19 December 2012, and distributing marijuana on divers occasions between 1 October 2012 and 19 December 2012. Lastly, he was convicted of wrongfully appropriating military property, specifically two government laptops found during the search of his residence.

*Results of Testing Admitted at Trial*

During a consent search of the appellant's residence following his apprehension, agents found a large green plastic bag outside the upstairs bedroom of the appellant's roommate (the appellant's bedroom was downstairs). This bag contained a large amount of a green leafy substance that an AFOSI agent suspected was spice because it did not smell or look like marijuana. The bag was labeled "Damiana Leaf," which an AFOSI agent testified was an ingredient used in spice.

According to the AFOSI agents who testified at trial, the large bag labeled "Damiana Leaf" was seized by personnel from the Sumter County Sheriff's Office, and its contents were tested in its toxicology laboratory. A photograph of this bag admitted at trial actually shows an unlabeled small bag of a green material inside the larger bag which contains the "Damiana" label.

No personnel from Sumter County testified about the seizure or testing of this material. Instead, the test results were admitted, over defense objection, through a

---

[3] For the uses that allegedly occurred between 15 April 2010 and 10 April 2011, the lawful general order was the 15 April 2010 Air Combat Command General Order prohibiting the use and possession of salvia and spice. For the possession and the uses that occurred on or after 11 April 2011, the lawful general regulation was Air Force Instruction 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program* (11 April 2011).

two-page report signed by a chemist named Joseph Powell. The report (on Sumter County Sheriff's Office letterhead) lists the appellant and his roommate by name as "subjects" in a drug offense case. It states that certain items were received from a named member of the sheriff's office on 19 December 2012 and tested the following day:

Item 2A: Plastic bag containing green plant material
Item 2B: Plastic bag inside 2A containing green plant material

Under "results," the report states:

Item 2A: No prescription or controlled substance found

Item 2B: JWH-250 (1-pentyl-3-(2methoxyphenylacetyl)indole) found C-I

No explanation was provided during the motions session or before the panel regarding the connection between this result and spice, nor any explanation for the different test results for the two items.

Included on the report itself is the following language:

This is an official report of the Sumter County Sheriff's Office Forensic Services Unit and is to be used in connection with an official criminal investigation. This report is to be maintained in the case file.

In an admitted document entitled "certification of records custodian," Mr. Powell certified that the report:

[W]as made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters. . . . [and] that the [pages of the report] are true and exact copies of documents maintained in the files of the Sumter County Sheriff's Office in accordance with applicable law or regulation and kept in the course of the regularly conducted business and as a part of the regularly conducted activities of the Sumter County Sheriff's Office.

ACM S32160

This language mirrors the requirements in Mil. R. Evid. 902(11) which provides for the self-authentication of domestic business records through a declaration of a custodian or qualified witness.[4]

*Admission of Sumter County Sheriff's Office Report*

Prior to trial, the government notified the defense of its intention to offer the Sumter County report into evidence through the testimony of the chemist who conducted the testing. After the defense then filed a motion to compel the appointment of a defense expert, the government responded by removing the chemist from the witness list and moving to instead admit the report as a business record under the hearsay exception for records of regularly conducted activity—Mil. R. Evid. 803(6)—without calling an expert witness or anyone from the Sumter County Sheriff's Office. Trial counsel acknowledged that this process would violate the Confrontation Clause if the report was being offered "on the substantive issue of the presence of drugs." However, trial counsel contended the Sixth Amendment[5] jurisprudence was inapplicable because the report was being offered only for the limited purpose of corroborating the appellant's confession and that our superior court's decision in *United States v. Grant*, 56 M.J. 410 (C.A.A.F. 2002), was controlling on the interaction between Mil. R. Evid. 803(6) and 304(g).

The military judge denied the appellant's motion, finding the test results could be admitted without expert or foundational testimony. Since the government intended to use this document only to corroborate the confession, she found its admission through this process did not implicate the appellant's right to confrontation. Citing to an Army case, she determined "a statement properly admitted under a hearsay exception may violate constitutional [confrontation] rights" and still be admissible. She also noted the majority decision in *Crawford v. Washington*, states the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. 36, 59 n.9 (2004). The military judge then admitted the report as corroboration over a continuing defense objection, including Mil. R. Evid. 403. She did not make an express ruling that the statement was admissible as a business record under Mil. R. Evid. 803(6). The military judge also did not instruct the panel how they were permitted to use this report in assessing the appellant's guilt.

---

[4] According to a document which was not given to the members, Mr. Powell is a forensic chemist employed by the Sumter County Sheriff's Office to perform testing and analysis on evidence, including controlled substances prohibited by state law. This same document states he tested the items using the "legally reliable forensic laboratory procedures approved by the Sumter County Sheriff's Office," specifically gas chromatography, mass spectroscopy, and published literature. This was not admitted into evidence because the military judge sustained a defense objection based upon "improper bolstering" and "hearsay." In doing so, she also found the evidence "gets into testimonial hearsay."

[5] U.S. Const. amend. VI.

The appellant contends the admission of this report into evidence constituted prejudicial error. We agree.

*Applicability of Confrontation Clause to Evidence that Corroborates a Confession*

At the time of the appellant's court-martial, Mil. R. Evid. 304 read, in relevant part:

> An admission or a confession of the accused may be considered as evidence against the accused . . . only if *independent evidence . . . has been introduced* that corroborates the essential facts admitted to justify sufficiently an inference of their truth.

Mil. R. Evid. 304(g) (emphasis added).[6]

The primary issue in this case is whether the scientific evidence used to corroborate the appellant's confession was properly admitted into evidence such that it could be used for that purpose.

Even though a military judge's decision to admit evidence is reviewed under an abuse of discretion standard, *United States v. Clayton*, 67 M.J. 283, 286 (C.A.A.F. 2009), the question of whether the admitted evidence violates the Confrontation Clause of the Sixth Amendment is reviewed de novo. *United States v. Blazier*, 68 M.J. 439, 442 (C.A.A.F. 2010) [hereinafter *Blazier* I]. If we find a violation of the Confrontation Clause, we cannot affirm the conviction unless this court is convinced beyond a reasonable doubt that the error was harmless. *United States v. Rankin*, 64 M.J. 348, 353 (C.A.A.F. 2007).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Therefore, "no testimonial hearsay may be admitted against a criminal defendant unless (1) the witness is unavailable, and (2) the witness was subject to prior cross-examination." *United States v. Blazier*, 69 M.J. 218, 222 (C.A.A.F. 2010) [hereinafter *Blazier II*] (citing *Crawford*, 541 U.S. at 53–54). The Sixth Amendment bars only testimonial statements because

---

[6] Through an executive order signed on 15 May 2013 (three weeks after the appellant's court-martial), the President implemented a complete revision of the Military Rules of Evidence. Mil. R. Evid. 304(g) was moved to Mil. R. Evid. 304(c)(2). The new rule uses the phrase "has been admitted into evidence" instead of the phrase "has been introduced." However, this is not a substantive change as there has been a longstanding requirement that the corroborating evidence be admitted into evidence. *See United States v. Duvall*, 47 M.J. 189, 191–92 (C.A.A.F. 1997); *United States v. Adams*, 74 M.J. 137, 139 n.6 (C.A.A.F. 2015) (noting that Mil. R. Evid. 304(c) remains substantively the same as Mil. R. Evid. 304(g)). Furthermore, the revised rule uses the words "admitted" and "introduced" interchangeably. *Cf.* Mil. R. Evid. 304(c)(2) and 304(c)(5).

"[o]nly statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

At trial, the appellant contended his Sixth Amendment right to confrontation would be violated if the Sumter County laboratory report was admitted without testimony from laboratory personnel. Trial counsel acknowledged this would be the case if there waere no confession but successfully argued that our superior court's decision in *Grant*, authorizes the admission of business records without confrontation when the records are admitted to corroborate a confession.

In *Grant*, the government attempted to admit a laboratory report for the limited purpose of corroborating the accused's confession to ingesting drugs. A doctor at an overseas base ordered a drug screen analysis as part of his effort to determine why the accused was unconscious; not realizing the local hospital could not conduct such testing. *Grant*, 56 M.J. at 412. Instead, this testing was performed by the epidemiology division of an Air Force laboratory at a different base, and it revealed the appellant's urine was positive for cannabinoids. Because a qualified witness from the local hospital testified the hospital procured and kept the report in the normal course of its business and relied upon its accuracy in making treatment decisions for patients, our superior court found the laboratory report was admissible as a hospital business record despite the lack of testimony from laboratory personnel. *Id.* at 414. Thus, the starting point for *Grant* was that the report was a properly-admitted business record.[7] *Id.* at 416 n.6 (emphasizing the case was "about corroborating a confession with a business record"). Here, however, the laboratory report was not a properly-admitted business record.

"Records of regularly conducted activity" (commonly referred to as "business records") which are created by an entity on a consistent and routine basis under methods and circumstances indicating trustworthiness are not excluded by the hearsay rule regardless of whether the declarant is available as a witness. Mil. R. Evid. 803(6) defines those records as:

---

[7] In *Grant*, the court also rejected the appellant's assertion that "aside from establishing the report as a business record, the government was required to put on expert testimony to interpret the results" of the testing for the panel. 56 M.J. 410, 415 (C.A.A.F. 2002). Case law at that time did require the government, when relying on scientific evidence to prove drug use, to put on expert testimony interpreting the test results in order to "provide a rational basis upon which the factfinder may draw an inference that [the illegal drug] was used." *Id.* citing *United States v. Murphy*, 23 M.J. 310, 312 (C.M.A. 1987). The court held, however, that these "additional foundational requirements" for such a urinalysis test "do[] not change the law of evidence pertaining to the admissibility of a business record offered to corroborate a confession." *Id.* at 416. Accordingly, the military judge did not err when he did not require the government "to support its offer of the report with expert testimony." *Id.* The court reached a similar conclusion regarding chain of custody evidence. We find that this language about expert testimony and chain of custody does not trump the confrontation clause requirements described in this opinion.

A memorandum, report, record or data compilation, in any form, of . . . conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make [said material], unless the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

Because of the regular and routine circumstances of their creation, such business records are generally not testimonial and thus can be admitted without confrontation clause concerns. *Crawford*, 541 U.S. at 56. Even if a document could qualify as nonhearsay or for a hearsay exception, however, the document's admission may violate the Sixth Amendment's confrontation requirement if it constitutes testimonial hearsay. *Id.* at 61–62. Thus, for a forensic laboratory report to be admitted under Mil. R. Evid. 803(6), it must not include any testimonial statements within it. Although the Supreme Court's 2009 decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), became the definitive case for this proposition, our superior court had already made similar pronouncements.

In *Magyari*, the government introduced a laboratory report from the Navy Drug Screening Laboratory that showed the accused's urine sample tested positive for methamphetamine. 63 M.J. 123 (C.A.A.F. 2006). In introducing the evidence, the government called three chain of custody witnesses and a quality assurance officer from the laboratory (who was not involved in the testing of the appellant's sample). On appeal, the accused argued the statement in the report was inadmissible testimonial hearsay and could not be used against him at trial. The court rejected the government's contention that laboratory reports are "inherently not testimonial because they are business and public records." *Id.* at 127. The court *did* conclude that this type of laboratory report can qualify as a business record, based on the language of Mil. R. Evid. 803(6) which implied that such forensic reports are included in the definition of business records because forensic laboratories are impartial examining centers, and a laboratory report is a record of "regularly conducted" activity.[8] *Id.* The court explicitly warned, however, that laboratory results or other types of routine records could be testimonial when a defendant is already under investigation and the reports are prepared at the behest of law enforcement in anticipation of a prosecution. *Id.*

---

[8] "At trial, the Government elicited ample testimony verifying that [the] report was completed in the normal course of the Navy Drug Screening Laboratory's business. Further, lab results, DNA analyses, and hospital records, are oftentimes prepared in the course of routine, 'regularly conducted' business." *United States v.* Magyari, 63 M.J. 123, 127 (C.A.A.F. 2006).

That situation arose two years later in a case with very similar facts to the instant case and where the laboratory reports were also admitted to serve as corroboration for a confession. In *United States v. Harcrow*, 66 M.J. 154, 158–59 (C.A.A.F. 2008), a civilian sheriff's deputy arrested the accused at his home for desertion and unrelated state charges. During the arrest, deputies seized items of drug paraphernalia and sent them for analysis by the Virginia Division of Forensic Science, which subsequently issued two laboratory reports documenting the presence of cocaine and heroin on several of the items. The primary evidence against the accused at trial was his confession that he had recently used cocaine and possessed a bag containing cocaine and heroin at his home. Our superior court found the confrontation clause applied to the laboratory reports which were admitted to serve as corroboration of that confession.

The court noted that, prior to *Crawford*, hearsay statements could be admitted if they carried adequate indicia of reliability and that, at the time of Harcrow's trial, forensic laboratory reports were "normally admissible" under Mil. R. Evid. 803(6) because they generally met the criteria for a business records exception to the hearsay rule. *Harcrow*, 66 M.J. at 158. Given the change brought by *Crawford* and the warning it had made in *Magyari*, our superior court had "no difficulty" concluding that laboratory reports constitute testimonial statements. *Id.*; *see also United States v. Cavitt*, 69 M.J. 413, 414 (C.A.A.F. 2011). In *Harcrow*, the laboratory analysis was conducted at the behest of a civilian sheriff's office after arresting the accused for suspected drug use. The reports pertained to items seized from the accused's home at the time of the arrest, and the reports expressly identify the accused as a "suspect." 66 M.J. at 158. The court thus concluded the reports were testimonial and were erroneously admitted and could not be used to corroborate the appellant's confession. *Id.* at 159–60.

Our superior court's analytical framework was solidified the following year by the Supreme Court's decision in *Melendez-Diaz*, 557 U.S. at 305. Although it acknowledged that documents kept in the regular course of a business may ordinarily be admitted at trial despite their hearsay status, the Supreme Court continued, "[T]hat is not the case if the regularly conducted business activity is the production of evidence for use at trial." *Id.* at 321. Under those circumstances, when forensic laboratory reports state a suspect substance was an illegal drug, it is testimonial for Sixth Amendment purposes. "Analysts' certificates—like police reports generated by law enforcement officials—do not qualify as business or public records" if "calculated for use essentially in the court, not in the business." *Id.* at 321–22.; *see also Blazier II*, 69 M.J. at 226 n.8. The Court went on to explain the relationship between the business/official records hearsay exceptions and the Confrontation Clause:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because--having been created for the administration of an entity's affairs and not for the purpose of

> establishing or proving some fact at trial--they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here--prepared specifically for use at petitioner's trial--were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.

*Melendez-Diaz*, 557 U.S. at 324.[9]

Since that time, our superior court has again found the confrontation clause applicable to laboratory reports offered as corroboration of confessions. In *Henderson*, the accused confessed to using cocaine and marijuana, and the government offered two positive urinalyses as corroboration. The government did not call the individuals who performed the testing and observed the chain of custody for the appellant's urine sample, relying instead on the testimony of an expert forensic toxicologist from that laboratory who opined the samples analyzed in those exhibits contained the relevant metabolite. Our sister court had found the appellant waived any confrontation clause objection and, citing to *Grant*, held the urinalysis reports were admissible corroborative evidence. *United States v. Henderson*, Army 20090613 (Army Ct. Crim. App. 27 May 2011) (unpub. op.), *vacated*, 71 M.J. 102 (C.A.A.F. 2012). Our superior court vacated that decision and remanded it for consideration whether, in light of *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), the appellant had been denied meaningful cross examination of those who performed and observed the testing. *United States v. Henderson*, 71 M.J. 102 (C.A.A.F. 2012) (mem). If the confrontation clause did not apply to evidence submitted solely to corroborate a confession, there would be no need for such a remand order.[10] On remand, the Army Court then applied the confrontation clause jurisprudence to the urinalysis reports. *United States v. Henderson*, Army 20090613 (Army Ct. Crim. App. 1 June 2012) (unpub. op.).

*Application of Confrontation Clause Jurisprudence to the Sumter County Report*

Having found the confrontation clause applies to reports offered by the government to corroborate a confession, we turn to whether the introduction of the report in this case violated the appellant's right to confrontation.

---

[9] Two years later, in *Bullcoming v. New Mexico*, the Court confirmed the Sixth Amendment's application to laboratory reports prepared as part of a criminal investigation. 131 S. Ct. 2705 (2011).

[10] Our superior court also recently granted review of a confrontation clause issue in a case where the Army Court of Criminal Appeals applied the confrontation clause jurisprudence to a urinalysis report and expert testimony used to corroborate an accused's confession. *United States v. Bennett*, Army 20111107 (Army Ct. Crim. App. 28 April 2014) (unpub. op.), *review granted*, __ M.J. __ No. 14-0658/AR (C.A.A.F. 2 October 2014). The issue being reviewed is whether an expert was erroneously allowed to repeat testimonial hearsay, denying the accused's right to confrontation and, if so, whether the appellant's confession is adequately corroborated.

An item of evidence is "testimonial" if its "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822; *accord United States v. Porter*, 72 M.J. 335, 337–38 (C.A.A.F. 2013); *United States v. Tearman*, 72 M.J. 54, 60 (C.A.A.F. 2013); *United States v. Squire*, 72 M.J. 285, 290 (C.A.A.F. 2013). An objective test is applied when identifying the primary purpose of an out-of-court statement. *Williams v. Illinois*, 132 S. Ct. 2221, 2243 (2012) (plurality opinion). To assess a statement's "primary purpose," we conduct an "objective analysis of . . . the statements and actions of the parties." *Michigan v. Bryant*, 562 U.S. 344, 361 (2011).

"[A] statement is testimonial if 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *United States v. Sweeney*, 70 M.J. 296, 301 (C.A.A.F. 2011) (quoting *Blazier I*, 68 M.J. at 442). "[T]he focus has to be on the purpose of the statements in the drug testing report itself . . . ." *Id.* at 302. Even though those performing the testing "may well be 'independent scientist[s]' carrying out 'non-adversarial public dut[ies],' that does not mean that their statements are not produced to serve as evidence." *Id.* (quoting *Bullcoming*, 131 S. Ct. at 2717) (alternations in original). Indicia of formality or solemnity that would suggest an evidentiary purpose is one factor relevant to whether statements are testimonial. *Tearman*, 72 M.J. at 61 (citing *Bullcoming*, 131 S. Ct. at 2717). Business records are not testimonial when they are "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Melendez-Diaz*, 557 U.S. at 324.

Applying this framework to the Sumter County report, we find the report to be testimonial and admitted in violation of the confrontation clause. Its primary, if not sole, purpose was to establish or prove past events for a future criminal prosecution. It was made under circumstances which would lead an objective witness reasonably to believe that it was made for use at a later trial. The appellant is listed as the "subject" of the report, law enforcement officers seized the material and delivered it to a government laboratory, the chemist performing the testing was employed by a civilian law enforcement entity, the chemist tested the evidence and prepared a signed report covering the results of his analysis, and the report itself stated it was to be used in connection with an official criminal investigation and maintained in that case file. *See Sweeney*, 70 M.J. at 302–03 (holding a document created solely for an evidentiary purpose made in aid of a police investigation is testimonial); *Harcrow*, 66 M.J. at 159 (rejecting the government's argument that laboratory reports will always be nontestimonial and noting that such records may be testimonial if an investigation is already pending against an individual and the testing is conducted by the government to discover evidence).

Under these circumstances, this report cannot be admitted as a business record as was the report in *Grant*. We find the military judge erred by admitting the Sumter County report into evidence.[11]

*Prejudice*

Having found constitutional error, we assess for prejudice. Confrontation Clause errors are subject to harmless-error analysis under which the beneficiary of the error must prove beyond a reasonable doubt that the error did not contribute to the guilty verdict. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Chapman v. California*, 386 U.S. 18, 24 (1967). This is a question of law we review de novo. *Tearman*, 72 M.J. at 62.

The government bears this burden of establishing that the constitutional error "'has no causal effect upon the findings.'" *Clayton*, 67 M.J. at 288 (quoting *United States v. Othuru*, 65 M.J. 375, 377 (C.A.A.F. 2007)). To meet this burden, the government must demonstrate there is no reasonable possibility that the testimonial hearsay contributed to the contested findings of guilty. *Chapman*, 386 U.S. at 23; *Tearman*, 72 M.J. at 62; *Porter*, 72 M.J. at 338; *Othuru*, 65 M.J. at 377.[12]

When assessing the potential prejudicial impact of a Confrontation Clause violation, we look at the entire record and assess the context in which the inadmissible hearsay was admitted, how it was used at trial, and how it compares to any properly admitted evidence. *See Tearman*, 72 M.J. at 62; *accord United States v. Chaves*, 481 F.3d 1274, 1277 (10th Cir. 2007).[13] The prejudice depends upon a host of factors,

---

[11] The military judge also referred to testimonial statements being admissible without confrontation if admitted for a nonhearsay purpose, citing to a footnote in *Crawford* that states the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. 36, 59 n.9 (2004). The Supreme Court's reference to this proposition in *Crawford* is inapplicable here. As our superior court emphasized in its recent *Adams* decision, independent evidence of the confession's essential "facts" must be admitted into evidence through corroborative evidence. *United States v. Adams*, 74 M.J. 137, 140 (C.A.A.F. 2015). By definition, to be proof of a "fact," the evidence must be offered for the truth of the matter asserted in the evidence. *See* Mil. R. Evid. 401 (stating relevant evidence is evidence that has "any tendency to make the existence of any fact more probable or less probable than it would be without the evidence"). Here, the results of the scientific testing were used by the government to prove that spice was found in the appellant's house and that fact was then used to corroborate the appellant's confession to using spice and as substantive evidence that he possessed and used spice.

[12] Our superior court's decision in *Sweeney* states the standard is a "reasonable probability" but that appears to be in error. *United States v. Sweeney*, 70 M.J. 296, 306 (C.A.A.F. 2011). This reference in *Sweeney* is found in a citation to our superior court's decision in *United States v. Blazier*, 69 M.J. 218, 222 (C.A.A.F. 2010) [hereinafter *Blazier II*], but *Blazier II* uses the words "reasonable possibility," using the language found in *Chapman v. California*, 386 U.S. 18 (1967).

[13] In *Harcrow*, as discussed above, our superior court concluded certain laboratory reports were erroneously admitted in violation of the Confrontation Clause and therefore could not serve as corroboration of the appellant's

including the importance of the testimonial hearsay in the prosecution's case, whether that hearsay was cumulative with other evidence, the presence or absence of evidence corroborating or contradicting the material points of the disputed evidence,[14] the extent of confrontation permitted regarding the disputed evidence, and the overall strength of the prosecution's case. *See Van Arsdall*, 475 U.S. at 684; *Tearman*, 72 M.J. at 62; *Sweeney*, 70 M.J. at 306.

The government's evidence relating to spice consisted of the appellant's admissions to investigators and evidence found on his person and in his apartment.[15] During his lengthy interview with investigators prior to the search of his residence, the

confession, and in doing so, found plain and obvious error. 66 M.J. 154, 160 (C.A.A.F. 2008). The court then found the admission of the reports was harmless beyond a reasonable doubt and therefore did not violate a substantial right. *Id.* at 155. In reaching this conclusion, the court noted the accused's admissions, rather than the laboratory reports, served as the primary evidence against him on the drug-related offenses and then assessed whether the government met its burden of showing the error was harmless beyond a reasonable doubt by evaluating whether there was sufficient evidence independent of those reports to corroborate the admissions. *Id.* at 160. Finding the uncontested testimony of two arresting deputies provided sufficient corroboration of the appellant's admission that he used and possessed cocaine and heroin, the court found the government had met its burden of demonstrating the erroneous admission of the laboratory reports was harmless beyond a reasonable doubt and the accused had failed to demonstrate that the error materially prejudiced a substantial right. *Id.* In reaching this conclusion, the court did not reference the *Van Arsdall* factors and did not explicitly analyze whether there was a reasonable possibility the improperly admitted evidence might have contributed to the conviction. *See Delaware v. Van Arsdall*, 475 U.S. 673 (1986). Given the lack of any logical explanation as to why that line of harmless error jurisprudence would not apply in this context, however, we interpret the *Harcrow* decision as finding (1) the accused's admissions were sufficiently corroborated by other evidence in the case and thus were admissible as evidence against him, and (2) the testimonial hearsay was unimportant in light of those corroborated admissions plus other admissible evidence considered by the panel. In other words, we find our superior court applied the *Van Arsdall* line of cases in finding the error was harmless beyond a reasonable doubt. In reaching this conclusion, we also assume the panel in *Harcrow* was properly instructed about how the members could use corroborative evidence in deciding what weight to give to the appellant's admissions. That instruction was not given here and the members were also erroneously instructed on the limited purpose for which it had been admitted.

[14] In this case, we do not give the government any benefit relating to this factor. After hearing telephonic testimony from a defense forensic toxicology expert regarding problems he had discovered with the Sumter County laboratory and its procedures, the military judge found the government's pretrial discovery efforts regarding the laboratory were deficient but then concluded this failure did not disadvantage the defense because the laboratory report was only being offered as corroboration. She then required the defense to proceed to trial without further discovery. She also denied a defense request to travel its forensic toxicology expert to testify at trial, concluding he was not necessary because the government was not calling the chemist as a witness. On appeal, the appellant argues the military judge abused her discretion in making these rulings. We agree, as these rulings stemmed from the military judge's erroneous admission of the laboratory report, as discussed above. Our remedy for these erroneous rulings is to not weigh this factor in favor of the government since the rulings prevented the defense from contradicting the material points of the disputed evidence.

[15] The appellant concedes that his conviction for wrongfully distributing marijuana on divers occasions between 1 October and 19 December 2012 (the day after the drug bust) was not affected by the admission of the Sumter County report. To support this specification, the government presented evidence of the appellant's communications with the other military members regarding marijuana, the drug transaction he participated in on 18 December 2012, and the appellant's admission that he had distributed marijuana on 18 December 2012 and on 10–11 other occasions since 2008.

appellant first said he recently started smoking spice after being introduced to it by his roommate. After the agents accused him of lying, the appellant eventually admitted to smoking spice on numerous occasions since joining the Air Force and to procuring spice for at least one other military member. He denied ever possessing anything other than marijuana.[16]

The government also presented the testimony of two Air Force investigators as proof of the appellant's involvement with spice. Through these agents, the following evidence was adduced before the members:

1. When the appellant was apprehended at the drug bust, he was in possession of a green leafy substance inside a clear plastic bottle labeled "Legal Devil Potpourri, not for human consumption." This substance was never tested. No evidence was presented about whether it was or appeared to be an illegal substance.

2. During the search of the appellant's apartment, the agents found a box in the appellant's bedroom which contained a small plastic bottle like the one found on the appellant at the drug bust. The bottle was empty and was labeled "Kush. All legal." The agent testified that spice can be packaged in many ways, including in these types of bottles.

3. The agents also found a green leafy substance on a coffee table in the living room. One of the agents suspected it was spice. This substance was never tested.

4. A large bag of a green leafy substance was found upstairs outside the room of the appellant's roommate (the appellant's bedroom was downstairs). The bag was labeled "Damiana Leaf." An agent testified this was an ingredient used in spice. The other agent testified that he suspected it was spice because it resembled marijuana but did not smell like it. A smaller plastic bag was contained within the larger labeled bag.

The appellant never admitted possessing spice. Outside of the test results, the only evidence that the appellant possessed spice on 19 December 2012 came from the testimony of the agents about what they found in the appellant's apartment, namely a small amount of green leafy substance found on a coffee table that was never tested but that an agent suspected was spice, and a bag of a green leafy substance the same agent suspected was spice but whose label indicated to another agent that it was an ingredient used in spice. In light of this, there is a definite possibility that the laboratory report

---

[16] During cross-examination of the agents, trial defense counsel raised issues about techniques they used to get the appellant to confess (which included using a small room, talking about his family, and lying to him), as well as pointing out significant internal inconsistencies within his oral and written statements.

contributed to the guilty verdict for this specification.[17] The report's definitive conclusion that spice was found in the appellant's apartment was vitally important to the prosecution's claim the appellant possessed spice.

For the spice use and distribution specifications, the government presented the additional evidence of the appellant's admissions that he had distributed spice on one occasion and used it on multiple occasions during the charged time frames. In his findings argument, trial counsel told the panel that the evidence of the appellant's distribution and use of spice was found in his confession and that the other evidence in the case demonstrated the credibility and reliability of that confession. Trial counsel's argument relied heavily on the results of the laboratory testing as corroborating the appellant's statement. For the distribution specification, the only evidence trial counsel urged the panel to rely on was the confession and the one pound bag allegedly containing a large amount of spice which he argued made the confession credible.[18] Trial counsel made a similar argument relative to the use specification, while also pointing out the suspected spice found on the table in the appellant's apartment, the bottle found on the appellant after the drug bust, and the similar empty bottle found in his apartment. In his rebuttal argument, trial counsel again argued that the laboratory report demonstrated the reliability and believability of the appellant's confession. Trial counsel's repeated reliance on the results of the drug testing report as both direct evidence of the offenses and as corroborating evidence of the confession demonstrates the importance of this evidence to the prosecution's case.

Even if the evidence of the appellant's admissions and the above evidence about what was found on his person and in his apartment would be sufficient to uphold the appellant's convictions for using and distributing spice, we are required to assess whether there is a reasonable possibility that the laboratory report might have contributed to the distribution and use convictions, not whether the evidence was legally sufficient without the testimonial evidence. *See Chapman*, 386 U.S. at 23; *Tearman*, 72 M.J. at 62; *Porter*, 72 M.J. at 338. After considering the *Van Arsdall* factors, we conclude the government has failed to meet its burden to demonstrate there was no reasonable possibility the erroneously admitted evidence contributed to the verdict. The panel in all likelihood gave some, if not great, weight to the laboratory report as independent evidence and when deciding whether to give any weight to the appellant's admission to using and distributing spice. Its admission, therefore, was not harmless beyond a reasonable doubt, and we cannot uphold the findings of guilty to these specifications.

---

[17] As the military judge did not instruct the panel that the report had only been admitted for the limited purpose of corroborating the appellant's confession, the panel was able to consider it as substantive proof of the appellant's guilt.

[18] Notably, the large bag tested negative for any controlled substances. It was the smaller bag inside this large bag that had a positive result during the Sumter County testing.

In sum, for all specifications relating to spice, we are not convinced beyond a reasonable doubt that the laboratory report was unimportant in light of everything else the court members considered on the issue in question. As there is a reasonable possibility the laboratory report contributed to the verdict, we cannot affirm these convictions because we are not convinced beyond a reasonable doubt that the error "was not a factor in obtaining that conviction." *Othuru*, 65 M.J. at 377 (quoting *United States v. Kreutzer*, 61 M.J. 293, 299 (C.A.A.F. 2005)). Therefore, we set aside and dismiss Charge I and its three specifications, and Charge IV and its specification.

*Sentence Reassessment*

Having set aside a finding of guilty to two charges and their specifications, we must now "determine what sentence the court-martial would probably have adjudged if the error had not been committed at trial." *United States v. Davis*, 48 M.J. 494, 495 (C.A.A.F. 1998). Our superior court has held that a court of criminal appeals can reassess a sentence to cure the effect of prejudicial error where that court can be confident "that, absent any error, the sentence adjudged would have been of at least a certain severity." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013).

In determining whether to reassess a sentence or order a rehearing, we consider the totality of the circumstances with the following as illustrative factors: (1) dramatic changes in the penalty landscape and exposure, (2) the forum, (3) whether the remaining offenses capture the gravamen of the criminal conduct, (4) whether significant or aggravating circumstances remain admissible and relevant, and (5) whether the remaining offenses are the type with which we as appellate judges have the experience and familiarity to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16. We find we are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the record in accordance with the principles articulated by our superior court. Because there are factors favoring both sides in this case, we set out our rationale in some detail below.

Although we have set aside all the spice offenses, the appellant remains convicted of wrongfully distributing marijuana on multiple occasions and wrongfully appropriating military property. The penalty landscape is not significantly different because the remaining offenses still reach the statutory maximum for a special court-martial. We recognize the appellant chose to be sentenced by members, which generally weighs in favor of remanding a case for a rehearing on sentence. *See Winckelmann*, 73 M.J. at 16 (observing "judges of the courts of criminal appeals are more likely to be certain of what a military judge would have done as opposed to members"). The remaining marijuana offense captures the gravamen of the appellant's criminal conduct—being involved with illegal drugs and involving others (including military members) in that activity by

distributing to them. Furthermore, the offenses of which the appellant remains convicted are those with which we are experienced and familiar in determining sentence appropriateness, and our combined experience provides a substantial basis to judge how members tend to treat such offenses.

Under the totality of the circumstances, we are confident that we can reliably determine the members would have imposed no less than a reduction to E-1, confinement for 3 months, and a bad-conduct discharge.

*Challenge for Cause*

The appellant argues the military judge erroneously denied a challenge for cause against Lieutenant Colonel (Lt Col) JJ for implied bias because he had regular contact with members of the legal office based on his role as a commander on base. During voir dire, Lt Col JJ indicated he had received this legal advice from one of the two trial counsel in the case, including as recently as a week before the appellant's trial. Lt Col JJ also described a situation involving an Airman in his squadron who had used spice.

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)).

The test for assessing an R.C.M. 912(f)(1)(N) challenge for implied bias is "objective, viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *Clay*, 64 M.J. at 276) (internal quotation marks omitted). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Id.* (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002)). We review issues of implied bias "under a standard less deferential than abuse of discretion but more deferential than de novo." *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (quoting *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)) (internal quotation marks omitted). "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "The liberal grant mandate recognizes the unique nature of military courts-martial panels, particularly that those bodies are detailed by convening authorities and that the accused has only one peremptory challenge." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006) (citing *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005)).

The military judge did not abuse her discretion in denying the challenge for cause against Lt Col JJ. In response to questioning, Lt Col JJ fully explained his professional dealings with the legal office and the case of the Airman in his squadron. He also understood the government's obligation regarding the burden of proof in the case and stated that he did not believe confinement or a punitive discharge was required if the appellant was convicted. The military judge observed Lt Col JJ's demeanor when answering the individual questions and considered both actual bias and implied bias with the liberal grant mandate. We find no error in the military judge's denial of the challenge for cause against Lt Col JJ.

*Appellate Review Time Standards*

In a supplemental assignment of error filed in April 2015, the appellant argues, citing *Moreno*, 63 M.J. at 135, that the unreasonable post-trial delay from the date the case was docketed with this court in July 2013 until this opinion warrants relief. The appellant further cites *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), noting this court's responsibility to affirm only those findings and sentence that should be approved.

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of docketing the case before this court. *Moreno*, 63 M.J. at 142. The *Moreno* standards continue to apply as a case continues through the appellate process; however, the *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this court and our superior court is within the 18-month standard. *United States v. Mackie*, 72 M.J. 135–36 (C.A.A.F. 2013); *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010).

If the *Moreno* standards are violated, the delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 507 U.S. at 530; *United States v. Morita*, 73 M.J. 548, 567 (A.F. Ct. Crim. App. 2013).

The time between docketing with this court and our initial decision was facially unreasonable, triggering analysis according to the *Barker* factors. When we assume error but are able to directly conclude that any error was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor. *See Allison*, 63 M.J. at 370. This approach is appropriate in the appellant's case. The post-trial record contains no evidence that the delay has had any negative impact on the appellant. Even the "stress

and anxiety" argued by the appellant is minimal in its impact and no more than any other appellant waiting appellate review. We recognize that our decision today grants the appellant some relief by setting aside and dismissing three specifications, but there is no reason to believe the appellant was prejudiced in any way by waiting for this relief.

Furthermore, when there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case not to be so egregious as to adversely affect the public's perception of fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *Tardif*, 57 M.J. at 224; *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Gay*, __ M.J. __, ACM 38525 (A.F. Ct. Crim. App. 12 June 2015), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or to the institution, whether relief is consistent with the goals of both justice and good order and discipline, and whether this court can provide any meaningful relief. *Id.*, slip op. at 11. No single factor is dispositive, and we may consider other factors as appropriate. *Id.*, slip op. at 12. We have the authority to tailor an appropriate remedy without giving the appellant a windfall. *See Tardif*, 57 M.J. at 225.

After considering the relevant factors in this case, we determine that no additional relief is warranted. We acknowledge that the time between docketing and issuing this opinion exceeded established standards. However, even analyzing the entire period from the time the case was first docketed in late July 2013 until today, we find there was no bad faith or gross negligence in the post-trial processing. The record of trial is 5 volumes, including a 586 page transcript. The appellant's assignment of errors was filed in February 2014, and a reply brief in March 2014, well after he was released from confinement from his adjudged sentence. After conducting its review in advance of the 18-month *Moreno* standard, this court ordered oral argument on an issue not fully addressed by the parties' briefs. After that argument was held in February 2015, this court continued its review of this complex case, to include incorporating recently issued decisions by our superior court. We find no evidence of harm to the integrity of the military justice system by allowing the full appellate review of this issue. Based on our

review of the entire record, setting aside any of the remaining portions of the appellant's sentence would be an intolerable windfall. We conclude that additional sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

Charge I and its three specifications and Charge IV and its specification are set aside and dismissed. We affirm the remaining findings. We reassess the sentence to reduction to E-1, confinement for 3 months, and a bad-conduct discharge.

The approved findings, as modified, and sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant remains. Articles 59(a) and 66(c), UCMJ. Accordingly, the findings, as modified, and the sentence, as reassessed, are **AFFIRMED**.


FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court